UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

Briana R.,[1]

    Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.

23-CV-0410-LJV
DECISION & ORDER

---

On May 9, 2023, the plaintiff, Briana R. ("Briana"), brought this action under the Social Security Act ("the Act"). Docket Item 1. She seeks review of the determination by the Commissioner of Social Security ("Commissioner") that she was not disabled.[2] *Id.* On September 5, 2023, Briana moved for judgment on the pleadings, Docket Item 8; on November 9, 2023, the Commissioner responded and cross-moved for judgment on the pleadings, Docket Item 11; and on November 26, 2023, Briana replied, Docket Item 12.

For the reasons that follow, this Court denies Briana's motion and grants the Commissioner's cross-motion.[3]

---

[1] To protect the privacy interests of Social Security litigants while maintaining public access to judicial records, this Court will identify any non-government party in cases filed under 42 U.S.C. § 405(g) only by first name and last initial. Standing Order, Identification of Non-Government Parties in Social Security Opinions (W.D.N.Y. Nov. 18, 2020).

[2] Briana applied for Supplemental Security Income ("SSI"), which is paid to a person with a disability who also demonstrates financial need. 42 U.S.C. § 1382(a).

[3] This Court assumes familiarity with the underlying facts, the procedural history, and the decision of the Administrative Law Judge ("ALJ") and refers only to the facts necessary to explain its decision.

## **STANDARD OF REVIEW**

"The scope of review of a disability determination . . . involves two levels of inquiry." *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987).  The court "must first decide whether [the Commissioner] applied the correct legal principles in making the determination." *Id*.  This includes ensuring "that the claimant has had a full hearing under the . . . regulations and in accordance with the beneficent purposes of the Social Security Act." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (alterations omitted) (quoting *Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990)).  Then, the court "decide[s] whether the determination is supported by 'substantial evidence.'" *Johnson*, 817 F.2d at 985 (quoting 42 U.S.C. § 405(g)).

"Substantial evidence" means "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).  "The substantial evidence standard means once an ALJ finds facts, [the court] can reject those facts only if a reasonable fact finder would *have to conclude otherwise*." *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (internal quotation marks and citation omitted) (emphasis in original); *see McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014) ("If evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.").  But "[w]here there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to

2

have her disability determination made according to the correct legal principles." *Johnson*, 817 F.2d at 986.

## DISCUSSION

### I. THE ALJ'S DECISION

On December 29, 2021, the ALJ found that Briana had not been under a disability since filing her application for SSI on March 2, 2020. *See* Docket Item 5 at 32. The ALJ's decision was based on the five-step sequential evaluation process under 20 C.F.R. §§ 404.1520(a) and 416.920(a). *See id.*

At step one, the ALJ found that Briana had not engaged in substantial gainful activity since applying for benefits on March 2, 2020. Docket Item 5 at 21. At step two, the ALJ found that Briana suffered from three severe, medically determinable impairments: "multiple sclerosis; bipolar disorder; and unspecified anxiety disorder." *Id.*

At step three, the ALJ found that Briana's severe, medically determinable impairments did not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *See id.* at 22-24. More specifically, the ALJ found that Briana's physical impairments did not meet or medically equal listing 11.09 (multiple sclerosis)*, id.* at 22, and that Briana's mental impairments did not meet or medically equal listing 12.04 or 12.06 (depressive, bipolar, or related disorders)*, id.* at 23. In assessing Briana's mental impairments, the ALJ found that Briana was moderately impaired in understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing herself. *Id.* at 23-24.

The ALJ then found that Briana had the residual functional capacity ("RFC")[4] to "perform light work as defined in 20 C[.]F[.]R[. §] 416.927(b) except" that:

> [Briana] can never work around hazards such as unprotected height[s] or dangerous moving mechanical parts.  [Briana] can understand, remember, and carry out simple instructions and [perform] tasks with no supervisory duties or independent decision making[ and] minimal changes in work routine and processes[;] [she can have] frequent interaction with supervisors, coworkers, and the general public, and no team, tandem, or codependent work.

*Id.* at 24.

At step four, the ALJ found that Briana had no past relevant work.  *Id.* at 30.  But given Briana's age, education, and RFC, the ALJ found at step five that Briana could perform substantial gainful activity as a routing clerk, office helper, or merchandise marker.  *Id.* at 31; *see Dictionary of Occupational Titles* 222.687-022, 1991 WL 672133 (Jan. 1, 2016); *id.* at 239.567-010, 1991 WL 672232 (Jan. 1, 2016); *id.* at 209.587-034, 1991 WL 671802 (Jan. 1, 2016).  Therefore, the ALJ found that Briana had not been under a disability or entitled to SSI since her application was filed on March 2, 2020.  *See* Docket Item 5 at 32.

## II.   ALLEGATIONS

Briana argues that the ALJ erred in two ways.  Docket Item 8-1 at 1.  First, she argues that the ALJ erred when he relied on his own lay opinion to craft her RFC.  *Id.* at 12-17.  Second, she argues that the ALJ improperly rejected the opinion of a nurse

---

[4] A claimant's RFC is the most "an individual can still do despite his or her limitations . . . in an ordinary work setting on a regular and continuing basis."  SSR 96-8p, 1996 WL 374184, at *2 (July 2, 1996).  "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule."  *Id.*; *see Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999).

practitioner, Katelyn McCormack, NP-C.  *Id.* at 18-22.  For the reasons that follow, this Court disagrees.

### III.   ANALYSIS

#### A.  ALJ'S RFC DETERMINATION

An ALJ must "weigh all of the evidence available to make an RFC finding that [is] consistent with the record as a whole."  *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) (summary order); *accord Schillo v. Kijakazi*, 31 F.4th 64, 78 (2d Cir. 2022).  But that does not mean that the RFC needs to "perfectly correspond with any of the opinions of medical sources cited in [the ALJ's] decision," *Matta*, 508 F. App'x at 56, or even be based on opinion evidence, *see Corbiere v. Berryhill*, 760 F. App'x 54, 56 (2d Cir. 2019) (summary order).  As long as the ALJ considers all the medical evidence and appropriately analyzes the medical opinions, an RFC consistent with the record is not error.  *See* 20 C.F.R. §§ 404.1545, 416.945; *see also Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013) (holding that remand is not necessary "[w]here an ALJ's analysis at Step Four regarding a claimant's functional limitations and restrictions affords an adequate basis for meaningful judicial review, applies the proper legal standards, and is supported by substantial evidence").

Briana first argues that "the mental RFC was unsupported by substantial evidence, as it cannot be connected to any opinion by a medical professional, nor is it consistent with [her] testimony."  Docket Item 8-1 at 15-16.  But contrary to Briana's argument, "there is no blanket requirement that [an ALJ's] decision must be supported by a congruous medical opinion for it to meet th[e] evidentiary standard."  *Rubin v. Martin O'Malley, Comm'r of Soc. Sec.,* 116 F.4th 145, 155 (2d Cir. 2024).  Nor must the

5

RFC track a claimant's testimony about what she can and cannot do.  *Genier v. Astrue,* 606 F.3d 46, 49 (2d Cir. 2010) (ALJ "is not required to accept the claimant's subjective complaints without question; he may exercise discretion in weighing the credibility of the claimant's testimony in light of the other evidence in the record").  Because the ALJ thoroughly addressed Briana's symptoms, the medical evidence, and her activities of daily living in formulating the RFC, Docket Item 5 at 24-30, he did not err, *Cichocki*, 729 F.3d at 177.

For example, the ALJ first considered Briana's hearing testimony that she gets overwhelmed cooking and shopping and rarely spends time with others.  Docket Item 5 at 25 (*see id.* at 47-48, 57, 304-11).  Balanced against that, the ALJ noted testimony and medical records suggesting that Briana "can do light yoga, live alone, tend to her personal care needs, prepare simple meals, clean her apartment, do laundry, wash dishes, take out the trash, perform light gardening, attend appointments, shop in stores, journal, apply for jobs, use the computer, count change, read, and research news topics."  *Id.* at 25 (citing *id.* at 46-49, 57, 74-75, 304-11).  The ALJ also noted that Briana had "temporar[il]y move[d] out of state to help a friend with a photography business." *Id.* (citing *id.* at 71-72, 380).  All those activities supported an RFC limiting Briana to light work with additional restrictions.  In other words, the ALJ found that Briana "engages in activities that are not limited to the extent one would expect, given her complaints of disabling symptoms and limitation[s]," *id.*, and he based that conclusion on his weighing her activities of daily living against her subjective complaints.  That is exactly what an ALJ should do.  *See McGonagle v. Kijakazi,* 2022 WL 17724696, at *2 (2d Cir. Dec. 16, 2022) (finding that evidence that plaintiff could do a wide range of daily activities

supported ALJ's conclusion that plaintiff's mental health impairments did not meet the severity of any listing); *Cage v. Comm'r of Soc. Sec.,* 692 F.3d 118, 122 (2d Cir. 2012) (The Second Circuit will "defer to the Commissioner's resolution of conflicting evidence.").

The RFC also was supported by the psychiatric evaluation of Dennis Noia, Ph.D. Docket Item 5 at 484-89.  On June 16, 2020, Dr. Noia met with Briana, noting her report of "symptoms of depression, including dysphoric mood, loss of usual interest, fatigue and loss of energy, irritability, difficulty concentrating, diminished sense of pleasure, and social withdrawal."  *Id.* at 484-85.  Dr. Noia found that Briana's thought process was coherent and goal directed and that there was no evidence of any hallucinations, delusions, or paranoia.  *Id.* at 485.  Based on all that, Dr. Noia opined that Briana was only mildly impaired in using reason and judgment to make work related decisions; interacting adequately with supervisors, coworkers, and the public; and sustaining an ordinary routine and regular attendance at work; he found her to be moderately impaired in regulating emotions, controlling behavior, and maintaining well-being.  *Id.* at 486-87.

The ALJ found Dr. Noia's "opinion persuasive as to [Briana's] moderate limitations regulating emotions, controlling behavior, and maintaining well-being and the concomitant opinion that [Briana's] psychiatric symptoms might interfere with [her] ability to function on a daily basis."  Docket Item 5 at 29.  He also noted that Dr. Noia's "opinion is supported by a detailed report of examination of [Briana] and generally consistent with [her] treatment records for her mental conditions."  *Id.*  But the ALJ also found that Dr. Noia's opinion that Briana had "no[] or only mild mental limitations" in

7

other areas understated her limitations. *See id.* (citing Docket Item 5 at 469, 473-74, 479, 495, 497, 585, 617, 645, 654, 678, 695). And he therefore fashioned an RFC that accounted for the more severe limitations.

What is more, two psychological consultants—H. Tzetzo, M.D., and A. Chapman, Psy.D.—also opined that Briana's limitations were not severe. *See id.* at 30 (citing *id*. at 88-93, 105-08). The ALJ found these opinions not to be persuasive, but he based that finding on his conclusion that Briana's limitations were greater than the doctors opined. *Id.* And contrary to Briana's argument that the ALJ erred in rejecting the medical opinions and creating the RFC from whole cloth, an ALJ does not err in fashioning an RFC that is *more* restrictive than the medical experts opined. *Spottswood v. Kijakazi,* 2024 WL 89635, at *2 (2d Cir. Jan. 9, 2024) (finding no error where the RFC was "slightly more restrictive" than concluded by consultative examiners and state agency consultants because the record suggested greater limitations); *Orlando A. v. Comm'r of Soc. Sec.,* 2023 WL 5344934, at *4 (W.D.N.Y Aug. 21, 2023) ("Moreover, even if the ALJ erred with respect to Dr. Siddiqui's opinion, [p]laintiff failed to demonstrate prejudice warranting remand . . .. The ALJ's assessment of physical limitations more restrictive than Dr. Siddiqui identified is not a basis for remand . . .."); *Ramsey v. Comm'r of Soc. Sec.,* 830 F. App'x 37, 39 (2d Cir. 2020) (ALJ did not err in deviating from consultative examiner's recommendations by finding claimant more limited based on other evidence in the record). In other words, if the medical opinions find only mild limitations, an ALJ does not err or create a gap in the record by discounting those opinions and finding greater limitations. *Kiyantae N. v. Comm'r of Soc. Sec.,* 2022 WL 2758309, at *4 (W.D.N.Y. Jul. 14, 2022) ("As a general matter, where an ALJ imposes a limitation in his

RFC that is *more* restrictive than the relevant medical opinions, there is no error and thus no grounds for remand with respect to that limitation.") (citation omitted).

In sum, contrary to Briana's argument that the ALJ failed to construct any sort of accurate or logical bridge between the facts and the conclusions he reached in determining her mental RFC, Docket Item 8-1 at 16, the ALJ carefully considered all the evidence and explained his findings in detail.[5] Indeed, the ALJ found that Briana was more limited than three medical professionals opined, and he crafted an RFC that accounted for those more severe limitations. The ALJ therefore did not err in fashioning an RFC that limited Briana to simple light work. *See Allisa P. v. Comm'r of Soc. Sec.,* 2024 WL 278227, at *10 (W.D.N.Y. Jan. 25, 2024) ("Dr. Farmer's assessment of moderate limitations in regulating emotions, controlling behavior, and maintaining well-being is consistent with the ALJ's RFC finding for simple, unskilled work involving limited social interaction."); *Jennifer M. v. Comm'r of Soc. Sec.,* 2022 WL 19003388, at

---

[5] The RFC's limiting Briana to frequent interaction with supervisors, coworkers, and the general public is supported by Briana's function report noting that she is able to attend appointments and spend time with others, Docket Item 5 at 304, 308; her statement to Dr. Noia that she gets along "okay" with people, *id.* at 486; her report that she moved out of state to help a friend with a photography business, *id.* at 380; and her hearing testimony that she can shop in stores with her mom or a friend, *id.* at 47-49. It also is supported by Dr. Noia's opinion that she was only mildly limited in interacting adequately with supervisors, coworkers, and the public. *See id.* at 29 (citing *id.* at 486). "Moreover, even if the ALJ's RFC finding concerning 'frequent contact' with others had been error, that error was harmless, since [all of the jobs that the ALJ found Briana capable of performing] . . . require no more than occasional social interaction." *Wightman v. Comm'r of Soc. Sec.,* 2019 WL 2610712, at *2 (W.D.N.Y. Jun. 26, 2019); *see also Joseph J.B. v. Comm'r of Soc. Sec.,* 2024 WL 4217371, at *13 (W.D.N.Y. Aug. 29, 2024) (finding social interaction for routing clerk "not significant"); *Ridley G. v. Comm'r of Soc. Sec.,* 2021 WL 4307507, at *13 (N.D.N.Y. Sep. 22, 2021) (finding social interaction for office helper "not significant"); *Scott C. v. Comm'r of Soc. Sec.,* 2021 WL 2682276, at *5 (D. Vt. Jun. 30, 2021) (finding ALJ's error harmless because all positions identified by vocational expert, including price marker, did not require significant social interaction).

*7 (N.D.N.Y. Nov. 18, 2022) ("The ALJ accounted for functional limitations associated with moderate difficulties with concentration, pace, social interaction, and maintaining a regular schedule by limiting plaintiff to unskilled work requiring only simple, routine tasks and simple work-related decisions."), *report and recommendation adopted,* 2023 WL 2236607 (N.D.N.Y. Feb. 27, 2023); *Barksdale v. Saul,* 2019 WL 3842358, at *3-4 (W.D.N.Y. Aug. 15, 2019) (rejecting plaintiff's argument that ALJ "ignored" an opinion assessing moderate limitations in regulating emotions, controlling behavior, and maintain well-being, and finding that such an opinion was not inconsistent with RFC for simple work with only occasional interaction with others).

### B. NP MCCORMACK'S OPINION

Briana also argues that the ALJ erred by rejecting NP McCormack's opinion "based on improper reasoning and cherry-picking of the record." Docket Item 8-1 at 21-22. On October 7, 2021, NP McCormack completed a medical source statement, noting that Briana's multiple sclerosis is a permanent, lifelong condition. Docket Item 5 at 667-73. NP McCormack observed that Briana had difficulty with balance but was not given an assistive device. *Id.* at 668. NP McCormack opined that Briana had a mild limitation in understanding, remembering, or applying information; a mild limitation in concentrating, persisting, or maintaining pace; and a moderate limitation in adapting or managing herself. *Id.* at 672. Finally, she opined that Briana's fatigue would "likely" impact her ability to work for eight hours a day. *Id.* at 668.

Under 20 C.F.R. § 404.1520c, the ALJ must articulate how he or she considered certain factors in assessing medical opinions and prior administrative findings. *See* 20 C.F.R. § 404.1520c(a)-(c). Those factors include: (1) supportability, (2) consistency, (3)

10

relationship with the claimant (which has five sub-factors of its own to consider), (4) specialization, (5) other factors. *Id.* § 404.1520c(c). An ALJ must explain his or her conclusions with respect to the first two factors but need not address the remaining three. *Id.* § 404.1520c(b).

Those first two factors—"supportability" and "consistency"—are terms of art defined by the regulations. As to "supportability," the regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." *Id.* §§ 404.1520c(c)(1), 416.920c(c)(1). As to "consistency," the regulations provide that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id.* §§ 404.1520c(c)(2), 416.920c(c)(2).

The ALJ determined that NP McCormack's opinion was "not persuasive." Docket Item 5 at 30. As to the supportability factor, the ALJ noted that NP McCormack's "attached report is not supportive of or consistent with the limits alleged" and that "clear statements in the report" suggest that certain findings "were based specifically on [Briana's] self-report," Docket Item 5 at 30. In fact, NP McCormack noted that Briana did not report "any symptoms or concerns that would suggest an acute relapse" of her multiple sclerosis. *Id.* at 674. And as to the consistency factor, the ALJ found that NP McCormack "was overly reliant upon subjective statements of [Briana] rather than objective evidence of record[,] including treatment records that are more consistent with

11

a finding that [Briana] is less limited." *Id.* (citing *id.* at 465, 473-74, 479, 495, 497, 585, 617, 645, 654, 678, 695).

Briana asserts that the ALJ rejected NP McCormack's opinion solely because it was based on Briana's subjective complaints, Docket Item 8-1 at 19, but that is an overstatement. The ALJ simply and correctly noted that NP McCormack's more limiting assessments were based not on her own opinion but on Briana's reports. Docket Item 5 at 30. For example, NP McCormack checked the box indicating that Briana was incapable of even "low stress" jobs explicitly because it was "reported by patient." *Id.* at 668. Likewise, when asked whether Briana was "capable of sustained work [eight] hours a day [five] days per week," NP McCormack checked "no" explicitly because it was "reported by pt [sic]." *Id.* at 671. And an ALJ does not err in discounting those parts of a medical opinion that appear to be based on little more than subjective complaints. *See Collins v. Comm'r of Soc. Sec.,* 2020 WL 5742677, at *5 (W.D.N.Y. Sep. 24, 2020) (affirming ALJ's decision to afford little weight to opinion that "was inconsistent with the physical exam findings and appeared to be based primarily on plaintiff's subjective complaints"); *Bodoh v. Colvin,* 2015 WL 5512442, at *5 (N.D.N.Y Sep. 15, 2015) ("[T]he ALJ supported his rationale for affording Dr. Zogby's opinion little weight because it appeared, in part, to be based on [p]laintiff's subjective complaints."); *Sterling v. Astrue,* 2012 WL 3777066, at *5 (D. Vt. Aug. 29, 2012) ("The ALJ properly discounted the reliability of a treating physician's opinion because it was based on Sterling's subjective complaints and was unsupported by medical evidence.").

So the ALJ explicitly addressed the supportability and consistency factors and reasonably found NP McCormack's opinion not persuasive in light of her own notes and

12

other evidence in the medical record.  *Cf. Parent v. Comm'r of Soc. Sec.,* 2024 WL 3342463, at *2 (2d Cir. Jul. 9, 2024) (finding extreme mental limitations inconsistent with records of improvement with therapy and medication and physician's report of "relatively mild" mental health impairments during visits); *Monroe v. Comm'r of Soc. Sec.,* 676 F. App'x 5, 9 (2d Cir. 2017) (summary order) (finding that ALJ properly discounted medical source opinion based on, among other things, inconsistency between opinion and physician's treatment notes and properly relied on treatment notes and activities of daily living to formulate the RFC).

What is more, the opinions of other medical consultants—specifically, D. Miller, D.O., and C. Krist, D.O.—differed from NP McCormack's opinion and lent further support to the RFC.  More specifically, Dr. Miller opined that Briana was capable of light work, Docket Item 5 at 95, and Dr. Krist agreed but added that Briana must avoid even moderate exposure to hazards.  *Id.* at 111-12.  The ALJ found those opinions to be "generally persuasive," noting that they "are consistent with each other regarding the ability to perform . . . light work . . . and consistent with the record," and he incorporated Dr. Krist's additional limitations in the RFC.  *See id*. at 30; *see also id*. at 24 (RFC incorporating Dr. Krist's hazard limitations).  And even though these physicians did not treat or examine Briana, an ALJ does not err by relying on well supported opinions of physicians who only review the medical records.  *Felicia A. o/b/o O.A. v. Comm'r of Soc. Sec.,* 2024 WL 3696293, at *6 (N.D.N.Y. Aug. 15, 2024) ("As a threshold matter, the opinions of consultative examiners and state agency non-examining consultative physicians can constitute substantial evidence in support of the ALJ's decision.").

In sum, the ALJ did not err in discounting the opinion of NP McCormack and relying on the opinions of Drs. Krist and Miller.  Docket Item 5 at 29-30.  Because the ALJ was "entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole," *Matta,* 508 F. App'x at 56, and because the ALJ did just that, the ALJ's RFC determination was supported by substantial evidence, and this Court will not second guess it.

## **CONCLUSION**

The ALJ's decision was not contrary to the substantial evidence in the record, nor did it result from any legal error.  Therefore, and for the reasons stated above, Briana's motion for judgment on the pleadings, Docket Item 8, is DENIED, and the Commissioner's cross-motion for judgment on the pleadings, Docket Item 11, is GRANTED.  The complaint is DISMISSED, and the Clerk of Court shall close the file.


SO ORDERED.

Dated:   September 16, 2025
         Buffalo, New York


                                    *Lawrence J. Vilardo*
                                    LAWRENCE J. VILARDO
                                    UNITED STATES DISTRICT JUDGE